IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| A.G.[1] | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHELLE KING, Acting | : | NO.  23-1511 |
| Commissioner of Social Security[2] | : | |

## MEMORANDUM AND ORDER

ELIZABETH T. HEY, U.S.M.J.                                    February 18, 2025

Plaintiff seeks review of the Commissioner's decision denying his application for supplemental security income ("SSI").  For the reasons that follow, I conclude that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and affirm the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSI on November 8, 2019, alleging disability beginning on May 1, 1996, as a result of a mood disorder, anxiety, alcohol, opioid, cannabis, cocaine and amphetamine-type use disorders, antisocial personality disorder, rosacea, seborrheic dermatitis, depressive disorder, and hepatitis C.  Tr. at 87,

---

[1]Consistent with the practice of this court to protect the privacy interests of plaintiffs in social security cases, I will refer to Plaintiff using her initials.  See Standing Order – In re:  Party Identification in Social Security Cases (E.D. Pa. June 10, 2024).

[2]Michelle King was appointed as the Acting Commissioner of Social Security on January 20, 2025.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. King should be substituted as the defendant in this case.  No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

244, 283.[3]  His application was denied initially, id. at 105-09, and on reconsideration, id. at 115-18, and he requested an administrative hearing.  Id. at 123-24.  After holding a hearing on October 18, 2021, id. at 42-71,[4] the ALJ issued an unfavorable decision on October 27, 2021.  Id. at 17-29.  The Appeals Council denied Plaintiff's request for review on February 15, 2023, id. at 1-4, making the ALJ's October 27, 2021 decision the final decision of the Commissioner.  20 C.F.R. § 416.1481.  Plaintiff sought review in the federal court on April 20, 2023, Doc. 1,[5] and the matter is now fully briefed and ripe for review.  Docs. 12-13.[6]

## II.    LEGAL STANDARD

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is

---

[3]Although Plaintiff alleged his onset date as May 1, 1996, for purposes of SSI his effective alleged onset date is his application date.  See 20 C.F.R. § 416.305 (application required for eligibility to SSI benefits).  Plaintiff filed three earlier applications for benefits in 2008, 2010, and 2011, but did not seek further review when they were denied at the initial consideration stage.  Tr. at 73.

[4]The ALJ originally convened the hearing on April 6, 2021, but when Plaintiff reported he was at work in a factory, the ALJ rescheduled the hearing and suggested Plaintiff find an attorney.  Tr. at 38-39.

[5]A claimant has 60 days after receipt of the Appeals Council's notice to file an appeal in the court.  20 C.F.R. § 416.1481.  The Administration allows 5 days after the date on the notice for receipt.  See https://www.ssa.gov/ssi/text-appeals-ussi.htm#:~:text=If%20you%20want%20to%20appeal,are%20entitled%20to%20continued%20benefits. (last visited Jan. 13, 2025).  Thus, Plaintiff's appeal is timely filed.

[6]The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  See Standing Order – In Re: Direct Assignment of Social Security Appeals to Magistrate Judges – Extension of Pilot Program (E.D. Pa. Nov. 27, 2020); Doc. 6.

whether there is substantial evidence to support the Commissioner's conclusions that Plaintiff is not disabled. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla." Zirnsak v. Colvin, 777 F.2d 607, 610 (3d Cir. 2014) (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (substantial evidence "means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court has plenary review of legal issues. Schaudeck, 181 F.3d at 431.

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . not less than twelve months." 42 U.S.C. § 423(d)(1). The Commissioner employs a five-step process, evaluating:

> 1.      Whether the claimant is currently engaged in substantial gainful activity;
>
> 2.      If not, whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities that has lasted or is expected to last for a continuous period of 12 months;
>
> 3.      If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;

        4.      If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform his past work; and

        5.      If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014); see also 20 C.F.R. § 416.920(a)(4).  Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of his age, education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

## III.    **DISCUSSION**

### A.    **ALJ's Findings and Plaintiff's Claims**

In her October 27, 2021 decision, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since November 8, 2019, his application date.  Tr. at 19.[7]  At step two, the ALJ found that Plaintiff suffers from the severe impairments of bipolar disorder, depressive disorder, intermittent explosive disorder, antisocial personality disorder, substance abuse disorder, and hepatitis C, and that Plaintiff's back pain is non-severe.  Id. at 20.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings.  Id.

---

[7]The ALJ found that Plaintiff's work after the application date was an unsuccessful work attempt.  Tr. at 19, 46-48.

The ALJ determined that Plaintiff retains the RFC to perform medium work, but limited to unskilled simple and routine tasks, simple decisions, occasional changes in the workplace, and occasional interactions with coworkers and supervisors, but no direct public interaction.  Tr. at 22.  The ALJ found that Plaintiff can perform his past relevant work as a machine operator.  Id. at 28.  In addition, based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff can perform the jobs of laboratory cleaner, cloth framer, and handle assembler.  Id. at 29.  As a result, the ALJ concluded that Plaintiff is not disabled.  Id.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to consider Plaintiff's low back condition as a severe impairment and failed to properly consider the evidence regarding Plaintiff's mental health impairments.  Doc. 12.  Defendant responds that the ALJ's decision is supported by substantial evidence and that she properly considered the evidence regarding Plaintiff's back pain and mental health impairments.  Doc. 13.

### B.    **Plaintiff's Claimed Limitations and Testimony at the Hearing**

Plaintiff was born on August 15, 1976, and thus was 43 years old when he applied for SSI (November 8, 2019), and 45 years old at the time of the ALJ's decision (October 27, 2021).  Tr. at 44, 244.  He completed seventh grade and attended a trade school for painting.  Id. at 284.  Plaintiff lives in an apartment on the second floor of a house.  Id. at 60-61.

At the administrative hearing, Plaintiff testified that he could not work full time due to "major back pains every day" and further testified that "dealing with people is

5

hard." Tr. at 52. He described having three herniated discs and was waiting for a referral

for physical therapy. Id. at 61. Plaintiff explained that he does not feel comfortable

around people, has difficulty expressing himself, and has trouble concentrating and

keeping focused. Id. at 52. In addition, Plaintiff testified that he has a problem with

people looking at him too much. Id. at 53, 58. He described a prior verbal altercation

with a co-worker, id. at 54-55, and testified that he served a 23-month jail term for drugs

in isolation due to fighting. Id. at 55-56. He also described wanting to keep to himself

and not wanting to deal with anyone. Id. at 59.

A vocational expert ("VE") also testified at the administrative hearing. Tr. at 62-

70. The VE characterized Plaintiff's past relevant work as a machine operator as

medium, unskilled work, and his work as a production assembler as light and unskilled,

but medium level as he performed the job. Id. at 63.[8] Based on the hypothetical posed

by the ALJ with the limitations included in the ALJ's RFC assessment, see supra at 5, the

VE testified that such an individual could perform Plaintiff's production assembler job or

machine operator job. Id. at 66. In addition, the VE testified that Plaintiff could perform

the jobs of laboratory cleaner, cloth framer, and handle assembler. Id. at 65-66.[9] If the

hypothetical included a limitation that the person would be off task 15-20 percent of the

day, the VE testified that such limitation would preclude all work. Id. at 67. Work

_____

[8]Plaintiff was working part time as a machine shop production worker assembling
sandpaper belts at the time of the administrative hearing. Tr. at 63-66. The VE explained
that this was a semi-skilled, medium job. Id. at 65-66.

[9]When asked if the hypothetical were limited to light work, the VE identified the
jobs of decal applier, switch box assembler, or test carbonation person. Tr. at 67.

would also be precluded if the individual were to get into verbal altercations with coworkers or supervisors.  Id. at 67-68.

C.    **Medical Evidence Summary**

Plaintiff has a history of depression, hepatitis C, and heroin and cocaine addiction. Tr. at 421, 426.  Additionally, he was involved in an auto accident in 1996, and has had intermittent complaints of back pain.  Id. at 479 (2/5/09 – at consultative exam ("CE"), reported back discomfort began after accident in 1996), 966-67 (8/3/20 – complaint of low back pain), 1005 (8/10/20 – at physical therapy evaluation, reported "recently the back pain has worsened").  I will address the medical records relating to Plaintiff's mental impairments before turning to the record relating to his physical impairments.

Although there are no records regarding past psychiatric hospital admissions in the administrative record, there are references to a hospitalization in late 1998-early 1999 after Plaintiff blacked out at a methadone clinic, tr. at 493, a hospitalization in 2010 at Belmont Hospital for a mood disorder, and a 302 commitment[10] at Horsham Clinic in 2011.  Id. at 905.  As for mental health treatment prior to his current application for benefits, Plaintiff has been diagnosed with bipolar II disorder and antisocial personality disorder, id. at 495-96 (6/17/10); bipolar affective disorder I, id. at 521 (10/25/10); bipolar I disorder and personality disorder, NOS, id. at 533 (4/4/12); and depressive disorder (diagnosed 6/1/15), intermittent explosive disorder (diagnosed 10/1/15),

---

[10]See 50 Pa. C.S. § 7302 (involuntary emergency examination).

insomnia disorder (diagnosed 8/2/17), and antisocial personality disorder (diagnosed 2/23/18).  Id. at 841 (prison records listing diagnoses).[11]

Plaintiff was in prison from January 2018 to November 2019, where he was treated with Lexapro, tr. at 760 (11/9//18), Remeron, id. at 726 (2/22/19), Vistaril, id. at 825 (5/17/18), and Buspar, id. at 841 (2/23/18).[12]  After his return to the community,[13] Plaintiff treated with Berks Counseling Center for his mental health impairments.  Id. at 919-26, 930-39, 983-1000, 1041-1135.  On March 25, 2020, Plaintiff's diagnoses were bipolar 1 disorder, current or most recent episode depressed, mild, intermittent explosive disorder, antisocial personality disorder, social anxiety disorder, opioid use disorder,

---

[11]The record also contains consultative examinations and assessments conducted with regard to earlier applications for benefits.  See tr. 458-63 (1/14/09 - Anthony Fischetto, Ed.D.), 465-78 (1/21/09 – Salvatore Cullari, Ph.D.), 479-88 (2/5/09 – Ronald Vandegriff, D.O., with lumbar x-ray), 491-98 (6/7/10 – Gregory Coleman, Psy.D.), 530-37 (4/4/12 - Dr. Coleman).  I will discuss these reports as necessary in addressing Plaintiff's claims.

[12]Lexapro (generic escitalopram) is a selective serotonin reuptake inhibitor antidepressant.  See https://www.drugs.com/lexapro.html (last visited Jan. 21, 2025).  Remeron (generic mirtazapine) is an antidepressant.  See https://www.drugs.com/remeron.html (last visited Jan. 21, 2025).  Vistaril (generic hydroxyzine) is an antihistamine also used as a sedative to treat anxiety and tension.  See https://www.drugs.com/vistaril.html (last visited Jan. 21, 2025).  Buspar (generic buspirone) is an anti-anxiety drug used to treat anxiety disorders or the symptoms of anxiety.  See https://www.drugs.com/buspar.html (last visited Jan. 21, 2025).

[13]Upon his release from prison, Plaintiff initially resided in a halfway house and continued drug treatment.  See tr. at 890.  Plaintiff treated with New Directions Treatment Services until February 20, 2020, which provided Plaintiff methadone to alleviate withdrawal symptoms resulting from his recovery from opioid use disorder.  Id. at 927.  He began treatment at Crossroads Treatment Centers on March 25, 2020, which provided Plaintiff buprenorphine-naloxone, a drug combination used to treat opioid addiction.  Id. at 940-61; see also https://www.drugs.com/mtm/buprenorphine-and-naloxone-oral-sublingual.html (last visited Jan. 21, 2025).

severe, in sustained remission, cannabis use disorder, severe, in sustained remission, and

cocaine use disorder, severe, in sustained remission.  Id. at 921-22.  Jeffrey Bolger, D.O.,

noted Plaintiff's complaints of waking up during the night sweating at times, but his sleep

had improved.  Id. at 920.  Plaintiff stated that his mood was doing "ok" and he thought

the medication was helpful.  Id.  At that time, Plaintiff was taking trazodone, quetiapine

(Seroquel), and duloxetine (Cymbalta).[14]  Id. at 920-21.  Dr. Bolger found Plaintiff had

no memory impairment, good judgment, fair insight, and good concentration.  Id. at 920.

On June 23, 2020, Dr. Bolger expressed concern over Plaintiff's swollen legs and

encouraged Plaintiff to go to the hospital.  Tr. at 931.  On July 9, 2020, Plaintiff reported

that the swelling in his legs had eased and that he had reduced the dosage of Seroquel.

Id. at 936.  Dr. Bolger increased Cymbalta to address Plaintiff's complaints of increased

depression and anxiety and increased trazodone for sleep.  Id.  On September 30, 2020,

Plaintiff reported that his mood was doing better and felt that the increased Cymbalta

helped.  Id. at 984.  Dr. Bolger noted that Plaintiff was waking a few times per night and

having difficulty falling back to sleep, but did not change Plaintiff's medication regimen.

Id.  On November 25, 2020, the doctor noted Plaintiff's depressed mood, "dealing with

---

[14]Trazodone is an antidepressant used to treat major depressive disorder.  See
https://www.drugs.com/trazodone.html (last visited Jan. 21, 2025).  Quetiapine (brand
name Seroquel) is used to treat schizophrenia and to treat episodes of mania or depression
in patients with bipolar disorder.  See https://www.drugs.com/quetiapine.html (last
visited Jan. 21, 2025).  Duloxetine (brand name Cymbalta) is a selective serotonin and
norepinephrine reuptake inhibitor antidepressant.  See
https://www.drugs.com/duloxetine.html (last visited Jan. 21, 2025).

normal life stressors," and increased Cymbalta for depression and Sinequan for sleep.[15]
Id. at 989.  Dr. Bolger increased Cymbalta on January 20, 2021, to address increased
anxiety.  Id. at 994.  On March 17, 2021, the doctor reduced Seroquel and Sinequan to
reduce grogginess because Plaintiff was working full-time day shift and had been
sleeping well.  Id. at 1075.  The doctor noted that Plaintiff's mood had been "fine."  Id.
On May 12, 2021, Dr. Bolger noted that Plaintiff had a normal mental status exam and
continued his medications.  Id. at 1111-12.

During group and individual therapy sessions in 2021 addressing his substance use
issues, Plaintiff expressed anger and frustration over his living situation.  Tr. at 1057,
1078, 1085, 1096, 1103.  On July 14, 2021, therapist Kayla Morgan, M.A., reported that
Plaintiff "presents with no symptoms of depression."  Id. at 1117.  On July 20, 2021,
Plaintiff reported that he had been sleeping only 3 hours a night.  Id. at 1121.  On August
2, 2021, Plaintiff had increased depression (described as mild by therapist Morgan) and
stress related to his unemployment.  Id. at 1129.

Michael Schuman, Ph.D., conducted a consultative Mental Status Examination on
February 26, 2020.  Tr. at 905-09.  Plaintiff reported many symptoms of depression and
anxiety, and Dr. Schuman noted that Plaintiff had poor eye contact, agitated affect, and
anxious mood.  Id. at 905, 907.  Plaintiff's attention and concentration were mildly
impaired as evidenced by his ability to do simple calculations but inability to perform

---

[15]Sinequan (generic doxepin) is a tricyclic antidepressant used to treat symptoms
of depression and/or anxiety and to treat insomnia.  See
https://www.drugs.com/mtm/doxepin-capsules-oral-concentrate.html (last visited Jan. 21,
2025).  The Sinequan brand name has been discontinued in the United States.  See
https://www.drugs.com/cdi/sinequan-doxepin-capsules.html (last visited Jan. 21, 2025).

serial 7s.  Id. at 907.  Recent and remote memory were impaired as a result of emotional distress due to depression, and Plaintiff could recall 3 objects immediately but none after a delay.  Id.  The doctor diagnosed bipolar II disorder, unspecified depressive and anxiety disorders, and substance use disorder, in partial remission.  Id. at 908.  In a Medical Source Statement, Dr. Schuman found Plaintiff had no limitations in the ability to understand, remember, and carry out simple instructions, or make judgments on simple work-related decisions; mild limitation in the ability to understand and remember complex instructions; and moderate limitation in the abilities to carry out complex instructions and make judgments on complex work-related decisions.  Id. at 910.  With respect to Plaintiff's interaction abilities, the doctor found he had moderate limitation in the abilities to interact appropriately with the public, supervisors, and co-workers, and marked limitation in the ability to respond appropriately to usual work situations and changes in a routine work setting.  Id. at 911.

On March 6, 2020, at the initial consideration stage, Molly Cowan, Psy.D., found from a review of the records that Plaintiff suffered from depressive, bipolar, and related disorders, anxiety and obsessive-compulsive disorders, and personality and impulse-control disorders.  Tr. at 79.  She found that Plaintiff had mild limitation in the abilities to understand, remember, or apply information, and moderate limitation in the abilities to interact with others, concentrate, persist, or maintain pace, and adapt or manage oneself.  Id.  Specifically, the doctor found that Plaintiff was not significantly limited in the abilities to carry out very short and simple instructions and maintain attention and concentration for extended periods, and moderately limited in the abilities to carry out

detailed instructions, interact with the public, accept criticism from supervisors, and get along with coworkers.  Id. at 83-84.  On October 8, 2020, at the reconsideration stage, Melissa Lynn Franks, Psy.D., found identical diagnoses and limitations.  Id. at 96, 100.

With respect to Plaintiff's physical impairments, in a consultative examination performed on February 5, 2009, in connection with a prior application for benefits, Ronald Vandegriff, D.O., noted that Plaintiff stated that he had back pain since a motor vehicle accident in 1996.  Tr. at 479.  At that time, Plaintiff had not sought any treatment for the back pain.[16]  Id.  The medical records from prison do not contain any notes regarding treatment for back pain.  See id. at 541-42 ("Problem List").  On August 3, 2020, Plaintiff complained of back pain to nurse practitioner ("NP") Bolaji Owoloja, C.R.N.P., at Jubilee Family Practice.  Id. at 966.  NP Owoloja noted that pain limited Plaintiff's lumbar range of motion, started Plaintiff on capsaicin cream, and referred him to physical therapy.  Id. at 966-67.  For hepatitis C, NP Owoloja prescribed albuterol and referred Plaintiff to gastroenterology for elevated liver enzymes.[17]  Id.

When Plaintiff began treatment with Pivot Physical Therapy on August 10, 2020, physical therapist ("PT") Eric Linderman noted that Plaintiff reported injuring his back in 1996, and complaining that the back pain had recently worsened.  Tr. at 1005.  PT

---

[16]Dr. Vandergriff ordered a lumbar x-ray which showed "[m]inimal osteophytic lipping."  Tr. at 488.

[17]Albuterol is a bronchodilator used to treat or prevent bronchospasm.  See https://www.drugs.com/albuterol.html (last visited Jan. 21, 2025).

Linderman noted a positive straight-leg-raise ("SLR") test bilaterally,[18] moderate

tenderness in the lumbar spine, and specific limitations in range of motion of the lumbar

spine.  Id. 1006-07.  Re-evaluation on September 3, 2020, after 10 treatment sessions,

showed increased range of lumbar motion in flexion, extension, and right and left

rotation.  Id. at 1012.  Plaintiff reported that his left side was hurting and he had

numbness and tingling in his left leg which caused his knee to buckle.  Id.  On September

28, 2020, after 20 therapy sessions, Plaintiff's lumbar range of motion had continued to

increase, but remained somewhat limited.  Id. at 1020.[19]  PT Linderman recommended a

pain management consult and imaging.  Id. at 1027.

On February 26, 2020, Ziba Monfared, M.D., conducted a consultative Internal

Medicine Examination.  Tr. at 890-93.  Plaintiff complained of non-radiating back pain of

8 out of 10.  Id. at 890.  On examination, the doctor noted a normal gait, full squat, and

the ability to walk on heels and toes without difficulty.  Id. at 891.  Plaintiff had a

negative SLR bilaterally and full strength in the upper and lower extremities.  Id. at 892.

In a Medical Source Statement, Dr. Monfared found that Plaintiff could continuously lift

and carry up to 50 pounds; and could sit, stand, and walk each for 8 hours in an 8-hour

day.  Id. at 895.

---

[18]In the SLR test, the patient lies supine and the symptomatic leg is lifted with the knee fully extended, and is positive for lumbar radiculopathy if pain is pain is produced between 30 and 90 degrees of elevation, with the distribution of the pain indicative of the nerve root involved.  Dorland's Illustrated Medical Dictionary, 32nd ed. (2012) ("DIMD"), at 1900.

[19]Flexion had increased from 75% to 90%; extension from 25% to 75%, right rotation from 25% to 75%, left rotation from 2% to 75%, right side bending from 50% to 75%, and left side bending remained at 50%.  Tr. at 1026.

On March 3, 2020, at the initial consideration stage, Michael J. Brown, D.O., determined from a review of the records that Plaintiff could frequently lift 25 pounds, and sit and stand/walk for about 6 hours each in an 8-hour workday.  Tr. at 81.  On October 6, 2020, Sanjay M. Gandhi, M.D., found identical limitations based on a review of the record.  Id. at 98.

### C.    Plaintiff's Claims

#### 1.    Back Impairment

Plaintiff complains that the ALJ failed to consider his back impairment severe. Doc. 12 at 2-4.  Defendant responds that the ALJ properly found Plaintiff's back impairment was not severe and, even if the ALJ erred, the failure to consider Plaintiff's back impairment severe was harmless because the ALJ proceeded to the latter steps of the sequential evaluation and considered Plaintiff's back impairment in determining Plaintiff's RFC.  Doc. 13 at 6-7.

Initially, I note that the ALJ appears to have conflated step two's severity and durational requirements.  Step two of the evaluation requires the claimant to establish that he or she has a severe impairment or combination of impairments that has lasted or is expected to last for 12 continuous months.  20 C.F.R. §§ 416.920(a)(4)(ii); 416.909.  A non-severe impairment is a "slight abnormality or a combination of slight abnormalities which have no more than a minimal effect on an individual's ability to work."  Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted).  Here, the ALJ stated, "[t]here is little evidence in the record that this impairment causes more than a minimal impact on basic work activities for 12 continuous months during the alleged

14

period of disability." Tr. at 20.  This statement is ambiguous as to whether the ALJ found Plaintiff's back impairment to meet the severity requirement, independent of the durational requirement.  Nevertheless, the ALJ's later analysis clears up the ambiguity. The ALJ found that Plaintiff's back impairment posed more than a minimal limitation on his ability to perform work because the ALJ specifically found that Dr. Monfared's assessment was not persuasive, based on limitations imposed by Plaintiff's back impairment.  Id. at 27.  Thus, the ALJ concluded that Plaintiff had a severe back impairment (resulting in more than a minimal effect on his ability to work), but that the back impairment had not lasted for 12 consecutive months.  In any event, any error in this respect is harmless for the reasons discussed herein.

    As defendant notes, an error at the second step of the sequential evaluation is harmless provided the ALJ determines that one of the claimant's impairments is severe. See Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 144-45 & n.2 (3d Cir. 2007) ("Because the ALJ found in [the claimant's] favor at Step Two, even if he had erroneously concluded that some of her impairments were non-severe, any error was harmless."); see also 20 C.F.R. § 416.923(c) ("[W]e will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately would be of sufficient severity.").  Here, the ALJ found that Plaintiff suffered from several severe impairments – bipolar disorder, depressive disorder, intermittent explosive disorder, antisocial personality disorder, substance abuse disorder, and hepatitis.  Tr. at 20.  The ALJ specifically considered Plaintiff's back impairment in determining his RFC.  In fact, the ALJ found consultative examiner Vandergriff's

opinion had "little persuasive value" because he failed to consider Plaintiff's reports of back pain and his primary care physician's notes of limited range of motion of the lumbar spine. Id. at 27. Likewise, as mentioned, the ALJ did not find Dr. Monfared's opinion persuasive because it was inconsistent with Plaintiff's complaints of back pain and the physical examination findings evidencing such back pain. Id. Because the ALJ proceeded beyond the second step of the sequential evaluation and considered limitations imposed by Plaintiff's back impairment in crafting the RFC assessment, any error in categorizing Plaintiff's back impairment as not severe is harmless.

I also note that the ALJ properly considered the evidence relating to Plaintiff's back impairment. When Plaintiff reported back pain to his primary care office, NP Owoloja recommended capsaicin cream and referred Plaintiff to physical therapy. Tr. at 967. When he began physical therapy in August 2020, Plaintiff reported injuring his back in a 1996 auto accident, and complained that his back pain had recently worsened. Id. at 1005. Plaintiff was not taking any medication for the pain, and by the end of September 2020, his lumbar range of motion had greatly improved with physical therapy. Id. at 1020. Based on the evidence, the ALJ limited Plaintiff to medium work, finding that the assessment of Dr. Monfared, consistent with heavy work, overstated Plaintiff's abilities in light of limitations imposed by Plaintiff's back impairment. Id. at 27. Both Drs. Brown and Gandhi found Plaintiff could perform medium work based on their record reviews. Id. at 81, 98. Thus, the ALJ's determination in this regard is supported by substantial evidence.

16

2.    <u>Mental Health Impairments</u>

Plaintiff complains that the ALJ failed to adequately consider the mental health treatment records in determining Plaintiff's RFC.  Doc. 12 at 4-7.  Defendant responds that the ALJ properly considered the mental health treatment evidence.  Doc. 13 at 8-10.

The ALJ's consideration of medical opinion evidence is governed by regulations which focus on the persuasiveness of each medical opinion.

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.

20 C.F.R. § 416.920c(a).[20]  The regulations list the factors to be utilized in considering medical opinions:  supportability, consistency, treatment relationship including the length and purpose of the treatment and frequency of examinations, specialization, and other factor including familiarity with other evidence in the record or an understanding of the disability program.  <u>Id.</u> § 416.920c(c).  The most important of these factors are supportability and consistency, and the regulations require the ALJ to explain these factors, but do not require discussion of the others.  <u>Id.</u> § 416.920c(b)(2).  The regulations explain that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . .  will be."  <u>Id.</u> § 416.920c(c)(1).  In addition, "[t]he more consistent a medical opinion(s) . . .  is with the evidence from other

---

[20]In contrast, the regulations governing applications filed prior to March 17, 2017, spoke in terms of the weight to be given each opinion, including controlling weight for the opinions of certain treating sources.  20 C.F.R. § 416.927.

medical sources and nonmedical sources . . . , the more persuasive the medical opinion(s) . . . will be." Id. § 416.920c(c)(2).

The change in the regulations did not change the basic rule that "[t]he ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Stewart v. Sec'y HEW, 714 F.2d 287, 290 (3d Cir. 1983)).  When there is a conflict in the evidence, the ALJ may choose which evidence to credit and which evidence not to credit, so long as she does not "reject evidence for no reason or the wrong reason."  Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005); see also Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).

Although Plaintiff complains that the ALJ failed to consider and explain her reasons for discounting pertinent mental health evidence, Doc. 12 at 6, Plaintiff fails to identify any evidence that the ALJ overlooked or explain how such evidence favors additional RFC limitations.[21]  In reviewing the ALJ's decision and the administrative record, the ALJ considered Plaintiff's mental health treatment and examinations dating back to 2009, when Dr. Fischetto conducted a consultative examination in relation to an earlier application for benefits.  Tr. at 24-25.  The ALJ found that Dr. Fischetto's opinion, which included only slight interaction limitations, was not persuasive because it was

---

[21]The Standing Procedural Order issued in this case requires that Plaintiff "reference the supporting evidence in the record" by reference to page number and, if available, line or paragraph.  Doc. 4 ¶ 3.  Plaintiff fails to cite any mental health treatment records that the ALJ overlooked.  Earlier in his brief, Plaintiff referred to the treatment notes from Berks Counseling Center.  Doc. 12 at 5.  The ALJ discussed Plaintiff's treatment at Berks Counseling Center generally and then in addressing the opinion evidence.  Tr. at 23-26.

outdated and inconsistent with Plaintiff's diagnoses of antisocial personality disorder and intermittent explosive disorder and with Dr. Fischetto's mental status exam.  Id.

The ALJ concluded that Dr. Coleman's June 17, 2010 assessment, in which the doctor found moderate limitations in all areas of interaction and in understanding, remembering, and carrying out detailed instructions, was somewhat persuasive, noting that the moderate limitations in social interaction were consistent with more recent evidence including diagnoses of intermittent explosive and antisocial personality disorders, but that the assessment was "not entirely consistent with subsequent treatment records which note [Plaintiff's] intact memory skills and adequate insight and judgment." Tr. at 25 (citing id. at 919-26, 930-39).  In his April 4, 2012 assessment, Dr. Coleman found moderate limitations in the ability to understand, remember, and carry out short, simple instructions; marked impairment in all social interaction and understanding, remembering, and carrying out detailed instructions; and extreme limitation in making judgments on simple work-related decisions.  Id. at 534.  The ALJ found this opinion was not persuasive because the marked and extreme findings "are not supported by mental status findings" or with the objective medical evidence establishing Plaintiff's intact memory and adequate insight and judgment.  Id. at 25 (citing id. at 919-26).  The ALJ's determination regarding this assessment is supported by the record.  During Plaintiff's treatment at Berks Counseling Center, Dr. Bolger consistently found that Plaintiff was cooperative, his recent and remote memory were intact, and his concentration was "good."  Id. at 920 (3/25/20), 931 (6/23/20), 936 (7/9/20), 984 (9/30/20), 988-89 (11/25/20), 993-94 (1/20/21), 1074-75 (3/17/21).

19

The ALJ found that Dr. Schuman's February 26, 2020 assessment was somewhat persuasive.  Tr. at 26.  The ALJ concluded that the evidence was consistent with moderate social interaction limitations as found by Dr. Schuman, but that the marked limitation the doctor found in the ability to respond appropriately to usual work situations and changes in a routine work setting was inconsistent with Plaintiff's return to work on a parttime basis.  Id.  The ALJ found the state agency psychologists' determinations were generally persuasive, noting that the record findings of no memory impairment and the ability to manage money and his own healthcare warranted no limitation in understanding, remembering or applying information.  Id.

In sum, the ALJ reviewed Plaintiff's mental health treatment records and considered his treatment and his providers' observations and conclusions in considering the assessments provided by the consultative examiners and state agency record reviewers.  Plaintiff has not identified any specific treatment records that the ALJ overlooked nor indicated how such treatment would have required additional RFC limitations.  As discussed, the ALJ's conclusions are supported by the record.[22]

---

[22]Plaintiff also alleges that the ALJ failed to address treatment records from Eastern Pennsylvania Gastroenterology and Liver Specialists and from Lehigh Valley Hospital for three hospitalizations.  Doc. 12 at 6.  Although NP Owoloja referred Plaintiff to gastroenterology, tr. at 1002, the record does not contain any treatment notes from the referenced providers and Plaintiff's counsel agreed at the administrative hearing that the record was complete with exhibits 1F through 23F.  Id. at 46.  The record does contain treatment notes from an admission to Reading Hospital on March 4, 2021, related to a penile discharge.  Id. at 1029-40.  Plaintiff was tested for sexually transmitted diseases, and released with a prescription for hydrochlorothiazide, a diuretic.  Id. at 1037.  With respect to Plaintiff's diagnosis of hepatitis C, the prison treatment notes indicate that Plaintiff's liver disease was controlled and remained unchanged, requiring six-month checks on his liver function.  See, e.g., id. at 595 (8/8/19).  Moreover, Plaintiff has not

**IV.    <u>CONCLUSION</u>**

The ALJ properly considered the evidence regarding Plaintiff's back impairment and any error in failing to denote it as severe was harmless because the ALJ considered the limitations imposed by the back impairment in crafting the RFC assessment and the ALJ's consideration of the evidence relating to Plaintiff's back impairment is supported by substantial evidence. With respect to the mental health treatment evidence, the ALJ properly considered the treatment record and properly relied on the treatment record in considering the opinion evidence.

An appropriate Order follows.

---

identified any limitations resulting from his hepatitis C. <u>See</u> <u>Petition of Sullivan</u>, 904 F.2d 826, 845 (3d Cir. 1990) (claimant must show not merely a diagnosis, but resulting functional limitations).